# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

## STATE OF MICHIGAN v McQUEEN

Docket No. 143824. Argued October 11, 2012 (Calendar No. 7). Decided February 8, 2013.

On behalf of the state of Michigan, the Isabella County Prosecuting Attorney filed a complaint in the Isabella Circuit Court for a temporary restraining order, a show-cause order, a preliminary injunction, and a permanent injunction, seeking to enjoin the operation of Compassionate Apothecary, LLC (CA), a medical-marijuana dispensary that was owned and operated by Brandon McQueen and Matthew Taylor. McQueen was a registered qualifying patient and a registered primary caregiver for three qualifying patients under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.* Taylor was the registered primary caregiver for two qualifying patients. They operated CA as a membership organization. To be a member of CA, an individual had to be either a registered qualifying patient or a registered primary caregiver. Caregivers could only be members of CA if a qualifying patient with whom he or she was connected through the state's registration process was also a member. Patients and caregivers who were members of CA could rent lockers from CA. Patients would rent lockers from CA when they had grown more marijuana than they needed to treat their own debilitating medical conditions and wanted to make the excess available to other patients. Caregivers would rent lockers when their patients did not need all the marijuana that they had grown. Patients and caregivers desiring to purchase marijuana from another member's locker could view the available marijuana strains in CA's display room. After the patient or caregiver had made a selection, a CA employee would retrieve the marijuana from the appropriate locker, weigh and package the marijuana, and record the purchase. The price of the marijuana would be set by the member who rented the locker, but CA kept a service fee for each transaction. The prosecuting attorney alleged that McQueen and Taylor's operation of CA did not comply with the MMMA, was contrary to the Public Health Code (PHC), MCL 333.1101 *et seq.*, and, thus, was a public nuisance. The court, Paul H. Chamberlin, C.J., denied the prosecuting attorney's requests for a temporary restraining order and a show-cause order. After a hearing, the court further denied the prosecuting attorney's request for a preliminary injunction and closed the case, concluding that the operation of CA was in compliance with the MMMA because the patient-to-patient transfers of marijuana that CA facilitated fell within the act's definition of the "medical use" of marijuana. The prosecuting attorney appealed. The Court of Appeals, MURRAY, C.J., and HOEKSTRA and STEPHENS, JJ., reversed and remanded for entry of judgment in favor of the prosecuting attorney, concluding that defendants' operation of CA was an enjoinable public nuisance because the operation of CA violated the PHC, which prohibits the possession and delivery of marijuana. The Court of Appeals reasoned that defendants' violation of the PHC was not excused by the MMMA because defendants did not operate CA in accordance with the provisions of the

MMMA—specifically, the Court explained that McQueen and Taylor had engaged in the sale of marijuana through their operation of CA, that the "medical use" of marijuana, as defined by the MMMA, does not include patient-to-patient sales of marijuana, and that no other provision of the MMMA could be read to permit such sales. 293 Mich App 644 (2011). The Supreme Court granted defendants leave to appeal. 491 Mich 890 (2012).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, MARY BETH KELLY, and ZAHRA, the Supreme Court *held*:

Contrary to the conclusion of the Court of Appeals, the definition of "medical use" in the MMMA includes the sale of marijuana. However, the Court of Appeals reached the correct result because the act does not permit a registered qualifying patient to transfer marijuana for another registered qualifying patient's medical use. Accordingly, the prosecuting attorney was entitled to injunctive relief to enjoin the operation of defendants' business because it constituted a public nuisance.

1. The MMMA authorizes the medical use of marijuana to the extent that it is carried out in accordance with the provisions of the act. Section 3(e) of the act, MCL 333.26423(e), defines "medical use" broadly to include the transfer of marijuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition. Because a transfer is any mode of disposing of or parting with an asset or an interest in an asset, including the payment of money, the word "transfer," as part of the statutory definition of "medical use," also includes sales. The Court of Appeals erred by concluding that a sale of marijuana was not a medical use, and that portion of its judgment was reversed.

2. Under § 7(a) of the MMMA, MCL 333.26427(a), any medical use of marijuana must occur in accordance with the provisions of the act. Absent a situation triggering the affirmative defense of § 8 of the MMMA (MCL 333.26428), § 4 of the act (MCL 333.26424) sets forth the requirements for a person to be entitled to immunity for the medical use of marijuana. MCL 333.26424(d) creates a presumption of medical use and then states how that presumption may be rebutted. A rebutted presumption of medical use renders immunity under § 4 of the MMMA inapplicable. Under the statute, the presumption may be rebutted upon a showing that the conduct related to marijuana was not for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the medical condition in accordance with the act. The definite article in § 4(d) refers to the qualifying patient who is asserting § 4 immunity. Because the MMMA's immunity provision contemplates that a registered qualifying patient's medical use of marijuana only occur for the purpose of alleviating his or her own debilitating medical condition or symptoms associated with that condition, and not another patient's condition or symptoms, § 4 does not authorize a registered qualifying patient to transfer marijuana to another registered qualifying patient. Similarly, to be eligible for § 4 immunity, a registered primary caregiver must be engaging in marijuana-related conduct for the purpose of alleviating the debilitating medical condition, or symptoms associated with the medical condition, of a registered qualifying patient to whom the caregiver is connected through the registration process of Michigan's Department of Community Health. Thus, § 4 does not offer immunity to a registered primary caregiver who transfers marijuana to anyone other than a registered qualifying patient to whom the caregiver is connected through the state's registration

process. Defendants' business facilitated patient-to-patient sales, but those transfers did not qualify for § 4 immunity because they encompassed marijuana-related conduct that was not for the purpose of alleviating the transferor's debilitating medical condition or its symptoms. Because defendants' medical use of marijuana did not comply with the immunity provisions of §§ 4(a), (b), and (d), defendants could not claim that § 4 insulated them from a public nuisance claim.

3. Section 4(i) of the MMMA, MCL 333.26424(i), permits any person to assist a registered qualifying patient with using or administering marijuana, but the terms "using" and "administering" are limited to conduct involving the actual ingestion of marijuana. Section 4(i) did not apply to defendants' actions, which involved assisting patients with acquiring and transferring marijuana.

4. The affirmative defense of § 8 of the MMMA, MCL 333.26428, applies only to criminal prosecutions involving marijuana, subject to limited exceptions contained in § 8(c) for disciplinary action by a business or occupational or professional licensing board or bureau or forfeiture of any interest in or right to property. Accordingly, § 8 did not provide defendants a basis to assert that their actions were in accordance with the MMMA.

5. Under MCL 600.3801, any building used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance as defined in MCL 333.7104 is declared a nuisance. Marijuana is a controlled substance under MCL 333.7104. Because the medical use of marijuana is allowed under state law to the extent that it is carried out in accordance with the MMMA, the MMMA controlled whether defendants' business constituted a public nuisance. While the Court of Appeals erred by excluding sales from the definition of "medical use," it correctly concluded that the MMMA does not contemplate patient-to-patient sales of marijuana for medical use and that by facilitating such sales, defendants' business constituted a public nuisance.

Court of Appeals' decision affirmed on alternative grounds.

Justice CAVANAGH, dissenting, disagreed with the majority's interpretation of the MMMA and would have held that when a qualified patient transfers marijuana to another qualified patient, both individuals have the right to assert immunity under § 4 of the act. The presumption that a qualifying patient or primary caregiver is engaged in the medical use of marijuana may be rebutted with evidence that the conduct related to marijuana was not for the purpose of alleviating the qualifying patient's medical condition. The majority reasoned that the reference to "the" qualified patient requires the conclusion that only the recipient of marijuana is entitled to § 4 immunity for a patient-to-patient transfer of marijuana. The majority's interpretation was inconsistent with the rules of statutory interpretation and with the purpose of the MMMA. The reference in § 4(d)(2) of the act to "the" qualifying patient simply requires that one of the two qualified patients involved in the transfer of marijuana have a debilitating medical

condition that the transfer of marijuana is intended to alleviate. The majority's erroneous interpretation of § 4(d) further led it to an incorrect conclusion that any facilitation of a patient-to-patient transfer of marijuana was enjoinable as a public nuisance.

Justice MCCORMACK took no part in the decision of this case.

©2013 State of Michigan

# Opinion

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack

FILED FEBRUARY 8, 2013

STATE OF MICHIGAN

SUPREME COURT

STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

No. 143824

BRANDON MCQUEEN and MATTHEW
TAYLOR, doing business as
COMPASSIONATE APOTHECARY, LLC,

     Defendants-Appellants.

---

BEFORE THE ENTIRE BENCH (except MCCORMACK, J.)

YOUNG, C.J.

In this public nuisance action, we must determine whether defendants' business, which facilitates patient-to-patient sales of marijuana, operates in accordance with the provisions of the Michigan Medical Marihuana Act (MMMA).[1] We hold that it does not and that, as a result, the Court of Appeals reached the correct result when it ordered that defendants' business be enjoined as a public nuisance.

---

[1] MCL 333.26421 *et seq*.

The MMMA authorizes "[t]he medical use of marihuana . . . to the extent that it is carried out in accordance with the provisions of [the] act."[2]  Section 3(e) of the act defines "medical use" broadly to include the "transfer" of marijuana "to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition."[3]  Because a transfer is "[*a*]*ny* mode of disposing of or parting with an asset or an interest in an asset, including . . . *the payment of money*,"[4] the word "transfer," as part of the statutory definition of "medical use," also includes sales.  The Court of Appeals erred by concluding that a sale of marijuana was not a medical use.

Nevertheless, the immunity from arrest, prosecution, or penalty provided to a registered qualifying patient in § 4 of the MMMA for engaging in the medical use of marijuana can be rebutted upon a showing "that conduct related to marihuana was not for the purpose of alleviating *the* qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition, in accordance with this act."[5]  Because the MMMA's immunity provision clearly contemplates that a registered qualifying patient's medical use of marijuana only occur for the purpose of alleviating *his own* debilitating medical condition or symptoms associated with his debilitating medical

---

[2] MCL 333.26427(a).

[3] MCL 333.26423(e).

[4] Black's Law Dictionary (8th ed), p 1535 (emphasis added); see also *Random House Webster's College Dictionary* (2d ed, 1997), p 1366 (defining "transfer" as "to convey or remove from one place, person, or position to another").

[5] MCL 333.26424(d) (emphasis added).

condition, and not *another patient's* condition or symptoms, § 4 does not authorize a registered qualifying patient to transfer marijuana to another registered qualifying patient. Accordingly, while the Court of Appeals erred by excluding sales from the definition of "medical use," we affirm on alternative grounds its conclusion that the MMMA does not contemplate patient-to-patient sales of marijuana for medical use and that, by facilitating such sales, defendants' business constituted a public nuisance.

## I. FACTS AND PROCEDURAL HISTORY

Defendants Brandon McQueen and Matthew Taylor own and operate C.A., LLC (hereinafter CA), formerly known as Compassionate Apothecary, LLC, a members-only medical marijuana dispensary located in Isabella County. McQueen is both a registered qualifying patient and a registered primary caregiver within the meaning of the MMMA,[6] while Taylor is a registered primary caregiver. Their stated purpose in operating CA is to "assist in the administration of [a] member patient's medical use" of marijuana.

CA requires every member to be either a registered qualifying patient or registered primary caregiver pursuant to § 6 of the MMMA and to possess a valid, unexpired medical marijuana registry identification card from the Michigan Department of Community Health (MDCH).[7] CA's basic membership fee of $5 a month allows a

---

[6] A "qualifying patient" is defined in the MMMA as "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(h). A "primary caregiver" is defined as "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has never been convicted of a felony involving illegal drugs." MCL 333.26423(g). The patient and caregiver registration processes are outlined in MCL 333.26426.

[7] Moreover, according to defendants, a registered primary caregiver can only become a member if the caregiver's patient is also a member and authorizes the caregiver to

3

member to access CA's services. For an additional fee, a member can rent one or more lockers to store up to 2.5 ounces of marijuana and make that marijuana available to other CA members to purchase.[8] The member sets the sale price of his marijuana,[9] and defendants retain a percentage of that price (about 20 percent) as a service fee. Defendants and their employees retain access at all times to the rented lockers, although the member may remove his marijuana from the lockers during business hours if he no longer wishes to make it available for sale.[10]

All CA members may purchase marijuana from other members' lockers.[11] A member who wishes to purchase marijuana for himself (or, if the member is a registered primary caregiver, for his patient) must show his unexpired MDCH qualifying patient or primary caregiver registry identification card when entering CA. A representative of CA—either one of the individual defendants or an employee—will then take the member to the display room, where a variety of strains are available for purchase.[12] The member

---

become a member.

[8] In order to rent a locker, the member must expressly authorize CA to sell the marijuana stored in that locker to other CA members.

[9] The sale price of marijuana at CA ranges from $7 a gram to $20 a gram.

[10] Defendants supervised four employees, but it is not clear from the record whether the employees were either registered qualifying patients or registered primary caregivers.

[11] CA does not allow a member to purchase more than 2.5 ounces over a 14-day period.

[12] The police officer who initially made contact with defendants testified that, in addition to "displays of various marijuana with prices," the display room also contained brownies "and other ingestible products."

4

makes a selection, and the CA representative measures and weighs the marijuana, packages it, seals it, and records the transaction.

CA opened for business in May 2010. In July 2010, the Isabella County Prosecuting Attorney, on behalf of the state of Michigan, filed a complaint in the Isabella Circuit Court, alleging that defendants' business constitutes a public nuisance because it does not comply with the MMMA. The complaint sought a temporary restraining order, a preliminary injunction, and a permanent injunction. After holding a two-day evidentiary hearing, the circuit court denied plaintiff's request for a preliminary injunction. The court found that defendants "properly acquired registry identification cards," that they "allow only registered qualifying patients and registered primary caregivers to lease lockers," and that the patients or caregivers possess permissible amounts of marijuana in their lockers. Moreover, the court found that defendants themselves "do not possess amounts of marihuana prohibited by the MMMA."

The court further determined that "the registered qualifying patients and registered caregivers perform medical use of the marihuana by transferring the marihuana within the lockers to other registered qualifying patients and registered primary caregivers." The court noted that plaintiff had "failed to provide any evidence that defendants' medical marihuana related conduct was not for the purpose of alleviating any qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." As a result, "the patient-to-patient transfers and deliveries of marihuana between registered qualifying patients fall soundly within medical use of marihuana as defined by the MMMA." The court then determined that § 4 of the MMMA expressed the intent "to permit . . . patient-to-patient transfers and deliveries of marihuana between

5

registered qualifying patients in order for registered qualifying patients to acquire permissible medical marihuana to alleviate their debilitating medical conditions and their respective symptoms." Finally, it noted that "[e]ssentially, defendants assist with the administration and usage of medical marihuana, which the Legislature permits under the MMMA."[13]

The Court of Appeals reversed the circuit court's decision and remanded for entry of judgment in favor of plaintiff.[14] The Court concluded that two of the circuit court's findings of fact were clearly erroneous. First, it concluded that possession of marijuana is not contingent on having an ownership interest in the marijuana and that, because "defendants exercise dominion and control over the marijuana that is stored in the lockers," they "possess the marijuana that is stored in the lockers."[15] Second, the Court concluded that defendants were engaged in the selling of marijuana because defendants (or their employees) "intend for, make possible, and actively engage in the sale of marijuana between CA members," even though they do not themselves own the marijuana that they sell.[16]

The Court concluded that the MMMA does not allow patient-to-patient sales. After noting that the MMMA "has no provision governing the dispensing of

---

[13] The court also noted that the issue of marijuana dispensaries "[was] not before the court" because this case involved "patient-to-patient transfers."

[14] *Michigan v McQueen*, 293 Mich App 644; 811 NW2d 513 (2011).

[15] *Id.* at 654.

[16] *Id.* at 655.

6

marijuana,"[17] the Court explained that the definition of "medical use" does not encompass the sale of marijuana, because it only allows the "delivery" and "transfer" of marijuana, not its sale, which "consists of the delivery or transfer *plus* the receipt of compensation."[18] In reaching this conclusion, the Court reasoned that § 4(e), which allows a caregiver to receive compensation but mandates that "[a]ny such compensation shall not constitute the sale of controlled substances,"[19] would be unnecessary if the definition of "medical use" encompassed sales.[20] Finally, the Court noted that defendants are not entitled to immunity under § 4(i) of the MMMA, which insulates from liability someone who assists a registered qualifying patient "with using or administering marihuana."[21] It explained that "[t]here is no evidence that defendants assist patients in preparing the marijuana to be consumed" or that they "physically aid the purchasing patients in consuming marijuana."[22] As a result, it concluded that plaintiff was entitled to a preliminary injunction, and it reversed the circuit court's ruling.

---

[17] *Id*. at 663.

[18] *Id.* at 668.

[19] MCL 333.26424(e).

[20] *McQueen*, 293 Mich App at 669.

[21] MCL 333.26424(i).

[22] *McQueen*, 293 Mich App at 673.

This Court granted defendants' application for leave to appeal and requested that the parties brief "whether the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., permits patient-to-patient sales of marijuana."[23]

## II. STANDARD OF REVIEW

We review for an abuse of discretion the decision to deny a preliminary injunction,[24] but we review de novo questions regarding the interpretation of the MMMA,[25] which the people enacted by initiative petition in November 2008.[26] "[T]he intent of the electors governs" the interpretation of voter-initiated statutes,[27] just as the intent of the Legislature governs the interpretation of legislatively enacted statutes.[28] The first step in interpreting a statute is to examine the statute's plain language, which provides "'the most reliable evidence of . . . intent . . . .'"[29] "If the statutory language is

---

[23] *Michigan v McQueen*, 491 Mich 890 (2012).

[24] *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008).

[25] *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012).

[26] See Const 1963, art 2, § 9 ("The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative . . . .").

[27] *Kolanek*, 491 Mich at 405.

[28] *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011), citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[29] *Sun Valley Foods*, 460 Mich at 236, quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

unambiguous, . . . '[n]o further judicial construction is required or permitted'" because we must conclude that the electors "'intended the meaning clearly expressed.'"[30]

A trial court's findings of fact may not be set aside unless they are clearly erroneous.[31] A ruling is clearly erroneous "if the reviewing court is left with a definite and firm conviction that the trial court made a mistake."[32]

## III. ANALYSIS AND APPLICATION

In this nuisance action, we must examine whether the MMMA allows the patient-to-patient sales that defendants facilitate or, instead, whether plaintiff is entitled to an injunction pursuant to MCL 600.3801.

At the time this action was brought, MCL 600.3801 stated that "[a]ny building . . . used for the *unlawful* manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance as defined in [MCL 333.7104] . . . is declared a nuisance . . . ."[33] Marijuana is a controlled substance as defined in MCL 333.7104. However, because "[t]he medical use of marihuana is allowed under state law to the

---

[30] *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012), quoting *Sun Valley Foods*, 460 Mich at 236 (alteration in original).

[31] MCR 2.613(C); *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

[32] *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

[33] Emphasis added. MCL 600.3805 allows the prosecuting attorney to maintain an action for equitable relief to abate a nuisance under MCL 600.3801. During the pendency of this case, the Legislature amended MCL 600.3801, but the operative language relevant to this case was unchanged. 2012 PA 352.

extent that it is carried out in accordance with [the MMMA],"[34] the MMMA controls whether defendants' business constitutes a public nuisance.

This Court first interpreted the MMMA in *People v Kolanek* and explained:

> The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use "is carried out in accordance with the provisions of [the MMMA]."[35]

In contrast to several other states' medical marijuana provisions,[36] the MMMA does not explicitly provide for businesses that dispense marijuana to patients. Nevertheless, defendants claim that § 3(e) of the MMMA allows their business to facilitate patient-to-patient sales of marijuana. The Court of Appeals disagreed and held that the term

---

[34] MCL 333.26427(a).

[35] *Kolanek*, 491 Mich at 394, quoting MCL 333.26427(a) (alteration in original).

[36] For instance, Colorado provides for and regulates "medical marijuana center[s]" that sell marijuana to registered medical marijuana patients. Colo Rev Stat 12-43.3-402. Similarly, Maine permits a registered medical marijuana patient to designate a not-for-profit dispensary that may provide marijuana for the patient and "[r]eceive reasonable monetary compensation for costs associated with assisting or for cultivating marijuana for a patient who designated the dispensary[.]" Me Rev Stat tit 22, § 2428(1-A). See also Ariz Rev Stat 36-2801(11) (defining "[n]onprofit medical marijuana dispensary" as "a not-for-profit entity that acquires, possesses, cultivates, manufactures, delivers, transfers, transports, supplies, sells or dispenses marijuana or related supplies and educational materials to cardholders"); RI Gen Laws 21-28.6-3(2) (defining "[c]ompassion center" as "a not-for-profit corporation . . . that acquires, possesses, cultivates, manufactures, delivers, transfers, transports, supplies or dispenses marijuana, and/or related supplies and educational materials, to registered qualifying patients and/or their registered primary caregivers who have designated it as one of their primary caregivers").

"medical use," defined in § 3(e), does not encompass sales. We turn now to this provision.

## A. "MEDICAL USE" OF MARIJUANA

As stated, § 7(a) of the MMMA provides that "[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of [the MMMA]." The MMMA specifically defines "medical use" in § 3(e) as

> the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition.[37]

At issue in this case is whether the sale of marijuana is an activity that falls within this definition of "medical use." The definition specifically incorporates nine activities relating to marijuana as "medical use," but it does not expressly use the word "sale." Because of this omission, plaintiff argues, and the Court of Appeals held, that the sale of marijuana falls outside the statutory definition of "medical use":

> [T]he sale of marijuana is not equivalent to the delivery or transfer of marijuana. The delivery or transfer of marijuana is only one component of the sale of marijuana—the sale of marijuana consists of the delivery or transfer *plus* the receipt of compensation. The "medical use" of marijuana, as defined by the MMMA, allows for the "delivery" and "transfer" of marijuana, but not the "sale" of marijuana. MCL 333.26423(e). We may not ignore, or view as inadvertent, the omission of the term "sale" from the definition of the "medical use" of marijuana.[38]

---

[37] MCL 333.26423(e).

[38] *McQueen*, 293 Mich App at 668.

11

Defendants claim that the Court of Appeals erred by excluding sales from the definition of "medical use."

In determining whether a sale constitutes "medical use," we first look to how the MMMA defines the term "medical use." In particular, the definition of "medical use" contains the word "transfer" as one of nine activities encompassing "medical use." The MMMA, however, does not itself define "transfer" or any of the other eight activities encompassing "medical use." Because undefined terms "shall be construed and understood according to the common and approved usage of the language,"[39] it is appropriate to consult dictionary definitions of terms used in the MMMA.[40]

A transfer is "[*a*]*ny* mode of disposing of or parting with an asset or an interest in an asset, including a gift, *the payment of money*, release, lease, or creation of a lien or other encumbrance."[41] Similarly, a sale is "[t]he *transfer* of property or title for a price."[42] Given these definitions, to state that a transfer does not encompass a sale is to ignore what a transfer encompasses. That a sale has an *additional* characteristic, distinguishing it from other types of transfers, does not make it any less a transfer, nor

---

[39] MCL 8.3a.

[40] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[41] Black's Law Dictionary (8th ed), p 1535 (emphasis added); see also *Random House Webster's College Dictionary* (2d ed, 1997), p 1366 (defining "transfer" as "to convey or remove from one place, person, or position to another").

[42] Black's Law Dictionary (8th ed), p 1364 (emphasis added); see also *Random House Webster's College Dictionary* (2d ed, 1997), p 1143 (defining "sale" as "transfer of property for money or credit").

12

does that additional characteristic require that the definition of "medical use" separately delineate the term "sale" in order for a sale to be considered a medical use.

Nor do other provisions of the MMMA limit the definition of "medical use" to exclude sales. For instance, § 4(e) allows a registered primary caregiver to "receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana," but states that "[a]ny such compensation shall not constitute the sale of controlled substances."[43] While this section specifically contemplates that a registered qualifying patient may compensate his caregiver, it does not narrow the word "transfer" as used in the § 3(e) definition of "medical use."[44] Rather, § 4(e) independently describes the relationship between a registered caregiver and his registered qualifying patient and provides an additional protection for the patient-caregiver relationship by emphasizing that it is not a criminal act for a registered qualifying patient to compensate a registered primary caregiver for costs associated with providing marijuana to the patient.[45]

Additionally, § 4(k) establishes criminal sanctions for a patient or caregiver "who sells marihuana to someone who is not allowed to use marihuana for medical purposes under [the MMMA] . . . ."[46] This provision is also irrelevant to understanding the

---

[43] MCL 333.26424(e).

[44] MCL 333.26423(e).

[45] Defendants claim that this provision excludes a caregiver's reimbursement from the provisions of the General Sales Tax Act, MCL 205.51 *et seq*. Because it is well beyond the scope of this case, we need not address that issue.

[46] A registered qualifying patient or registered primary caregiver who violates § 4(k) "shall have his or her registry identification card revoked and is guilty of a felony

13

definition of "medical use" in § 3(e). *Any* transfer to a person who is "not allowed to use marihuana for medical purposes"[47]—whether for a price or not—is already specifically excluded from the definition of "medical use," which requires a medical use to have the specific purpose to "treat or alleviate a *registered qualifying patient's* debilitating medical condition or symptoms associated with the debilitating medical condition."[48] Thus, rather than inform the definition of "medical use," § 4(k)[49] simply provides an additional criminal penalty for certain actions that *already* fall outside the definition of "medical use" and that are already barred under the Public Health Code.[50]

Therefore, we hold that the definition of "medical use" in § 3(e) of the MMMA includes the sale of marijuana. The Court of Appeals erred by concluding otherwise, and we reverse that portion of the Court of Appeals' judgment defining "medical use." Nevertheless, this definition of "medical use" only forms the beginning of our inquiry. Section 7(a) of the act requires *any* medical use of marijuana to occur "in accordance with the provisions of [the MMMA]." That limitation requires this Court to look beyond the definition of "medical use" to determine whether defendants' business operates "in

---

punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both, in addition to any other penalties for the distribution of marihuana." MCL 333.26424(k).

[47] MCL 333.26424(k).

[48] MCL 333.26423(e) (emphasis added).

[49] MCL 333.26424(k).

[50] MCL 333.1101 *et seq.*

14

accordance with the provisions of [the MMMA]."[51] Absent a situation triggering the affirmative defense of § 8 of the MMMA,[52] § 4 sets forth the requirements for a person to be entitled to immunity for the "medical use" of marijuana. It is entitlement to that immunity—not the definition of "medical use"—that demonstrates that the person's medical use of marijuana is in accordance with the MMMA. Therefore, we turn to § 4 to determine whether patient-to-patient sales are entitled to that section's provision of immunity.

## B. SECTION 4 IMMUNITY

Section 4(a) of the MMMA grants a "qualifying patient who has been issued and possesses a registry identification card"[53] immunity from arrest, prosecution, or penalty "for the medical use of marihuana in accordance with this act . . . ."[54] Similarly, § 4(b)

---

[51] MCL 333.26427(a).

[52] These situations are limited to "any prosecution involving marihuana," MCL 333.26428(a), a "disciplinary action by a business or occupational or professional licensing board or bureau," MCL 333.26428(c)(1), or "forfeiture of any interest in or right to property," MCL 333.26428(c)(2). For further discussion of the § 8 affirmative defense, see part III(C) of this opinion.

[53] "'Qualifying patient' means a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(h).

[54] MCL 333.26424(a). Section 4(a) also conditions immunity on the patient's possession of "an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility." Section 4(a) is consistent in structure with § 6(a)(6), which requires a registered qualifying patient to designate "whether the qualifying patient or primary caregiver will be allowed under state law to possess marihuana plants for the qualifying patient's medical use." MCL 333.26426(a)(6). This determination is "based solely on the qualifying patient's preference." MCL 333.26426(e)(6).

grants the same immunity from arrest, prosecution, or penalty to "[a] primary caregiver who has been issued and possesses a registry identification card . . . for assisting a qualifying patient to whom he or she is connected through the [MDCH's] registration process with the medical use of marihuana in accordance with this act . . . ."[55]

Furthermore, § 4(d) creates a presumption of medical use, which informs how § 4 immunity can be asserted or negated:

> There shall be a presumption that a qualifying patient or primary caregiver is engaged in the medical use of marihuana in accordance with this act if the qualifying patient or primary caregiver:
>
> (1) is in possession of a registry identification card; and
>
> (2) is in possession of an amount of marihuana that does not exceed the amount allowed under this act. *The presumption may be rebutted* by evidence that conduct related to marihuana *was not for the purpose of alleviating* **the** *qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition*, in accordance with this act.[56]

Because § 4(d) creates a presumption of medical use and then states how that presumption may be rebutted, we conclude that a rebutted presumption of medical use renders immunity under § 4 of the MMMA inapplicable.

---

[55] MCL 333.26424(b). "'Primary caregiver' means a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has never been convicted of a felony involving illegal drugs." MCL 333.26423(g). Section 4(b) also conditions immunity on the patient's possession of an amount of marijuana that does not exceed 2.5 ounces of usable marijuana for each qualifying patient to whom the caregiver is connected through the MDCH's registration process, and, for each qualifying patient who has specified that a primary caregiver will be allowed under state law to cultivate marijuana for the qualifying patient, 12 marijuana plants kept in an enclosed, locked facility.

[56] MCL 333.26424(d) (emphasis added).

The text of § 4(d) establishes that the MMMA intends to allow "a qualifying patient or primary caregiver" to be immune from arrest, prosecution, or penalty *only* if conduct related to marijuana is "for the purpose of alleviating *the* qualifying patient's debilitating medical condition" or its symptoms. Section 4 creates a *personal* right and protection for a registered qualifying patient's medical use of marijuana, but that right is limited to medical use that has the purpose of alleviating that patient's *own* debilitating medical condition or symptoms. If the medical use of marijuana is for some *other* purpose—even to alleviate the medical condition or symptoms of *a different registered qualifying patient*—then the presumption of immunity attendant to the "medical use" of marijuana has been rebutted.

The dissent claims that the presumption of immunity attendant to the "medical use" of marijuana applies when a qualifying patient transfers marijuana to another qualifying patient. However, the dissent's construction is not consistent with the statutory language that the people of Michigan actually adopted.[57] The presumption that "a qualifying patient" is engaged in the medical use of marijuana under § 4(d) is rebutted when marijuana-related conduct is "not for the purpose of alleviating *the* qualifying patient's debilitating medical condition . . . ." Contrary to the dissent's conclusion that

_____

[57] In concluding that our holding "is inconsistent with the purpose of the MMMA," *post* at 4, the dissent ignores that the purpose of any statutory text is communicated through the words actually enacted. By giving effect to the text of § 4(d), the Court *is* giving effect to the purpose of the MMMA. Similarly, the dissent's claim that qualifying patients "are, for all practical purposes, deprived of an additional route to obtain marijuana," *post* at 4, is irrelevant when the language of § 4(d) requires the conclusion that a transferor may not avail himself of immunity when the transfer is not to alleviate the transferor's debilitating medical condition.

17

§ 4(d) only requires "one of the two qualified patients involved in the transfer of marijuana [to] have a debilitating medical condition that the transfer of marijuana purports to alleviate,"[58] the definite article in § 4(d) refers to the qualifying patient who is asserting § 4 immunity, not to *any* qualifying patient involved in a transaction. While the introductory language of § 4(d) refers to "a" qualifying patient, that indefinite article simply means that any qualifying patient may claim § 4(d) immunity, as long as the marijuana-related conduct is related to alleviating "the" patient's medical condition.

Thus, § 4 immunity does not extend to a registered qualifying patient who transfers marijuana to another registered qualifying patient for the transferee's use[59] because the transferor is not engaging in conduct related to marijuana for the purpose of relieving *the transferor's own* condition or symptoms.[60] Similarly, § 4 immunity does not extend to a registered primary caregiver who transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient *with whom the caregiver is connected through the MDCH's registration process*.

---

[58] *Post* at 3.

[59] Our interpretation of § 4(d) does not turn on the fact that the patient-to-patient transfers occurred for a price. Rather, § 4(d) acts as a limitation on what sort of "medical use" is allowed under the MMMA. The same limitation that prohibits a patient from selling marijuana to another patient also prohibits him from undertaking *any* transfers to another patient.

[60] Of course, a registered qualifying patient who acquires marijuana—whether from another registered qualifying patient or even from someone who is not entitled to possess marijuana—to alleviate *his own* condition can still receive immunity from arrest, prosecution, or penalty because the § 4(d) presumption cannot be rebutted on that basis. In this sense, § 4 immunity is asymmetric: it allows a registered qualifying patient to obtain marijuana for his own medical use but does not allow him to transfer marijuana for another registered qualifying patient's use.

18

Defendants' business facilitates patient-to-patient sales, presumably to benefit the transferee patient's debilitating medical condition or symptoms. However, those transfers do not qualify for § 4 immunity because they encompass marijuana-related conduct that is not for the purpose of alleviating the *transferor's* debilitating medical condition or its symptoms. Because the defendants' "medical use" of marijuana does not comply with the immunity provisions of §§ 4(a), 4(b), and 4(d), defendants cannot claim that § 4 insulates them from a public nuisance claim.

Nevertheless, defendants posit that, even if they are not entitled to immunity under § 4(d), § 4(i) permits their business to operate in accordance with the MMMA. Section 4(i) insulates a person from "arrest, prosecution, or penalty in any manner . . . solely for being in the presence or vicinity of the medical use of marihuana in accordance with this act, or for assisting a registered qualifying patient with using or administering marihuana."[61] However, this provision does not apply to defendants' actions, nor does it apply to any patient-to-patient transfers of marijuana. First, defendants were not "solely . . . in the presence or vicinity of the medical use of marihuana" because they were actively facilitating patient-to-patient sales for pecuniary gain. Second, defendants were not "assisting a registered qualifying patient with using or administering marihuana." While they were assisting one registered qualifying patient with *acquiring* marijuana and another registered qualifying patient with *transferring* marijuana, they were not assisting *anyone* with *using* or *administering* marijuana.[62]

---

[61] MCL 333.26424(i).

[62] Defendants specifically denied that they allowed any ingestion of marijuana to occur at CA.

Notably, § 4(i) does not contain the statutory term "medical use," but instead contains two of the nine activities that encompass medical use: "using" and "administering" marijuana. "Use" is defined as "to employ for some purpose; put into service[.]"[63] "Administer" is defined in the medicinal context as "to give or apply: *to administer medicine*."[64] In this context, the terms "using" and "administering" are limited to conduct involving the actual ingestion of marijuana. Thus, by its plain language, § 4(i) permits, for example, the spouse of a registered qualifying patient to assist the patient in ingesting marijuana, regardless of the spouse's status. However, § 4(i) does not permit defendants' conduct in this case. Defendants transferred and delivered marijuana to patients by facilitating patient-to-patient sales; in doing so, they assisted those patients in acquiring marijuana. The transfer, delivery, and acquisition of marijuana are three activities that are part of the "medical use" of marijuana that the drafters of the MMMA chose *not* to include as protected activities within § 4(i). As a result, defendants' actions were not in accordance with the MMMA under that provision.

## C. SECTION 8 AFFIRMATIVE DEFENSE

Finally, even though § 4 does not permit defendants to operate a business that facilitates patient-to-patient sales of marijuana, our decision in *Kolanek* makes clear that § 8 provides separate protections for medical marijuana patients and caregivers and that one need not satisfy the requirements of § 4 immunity to be entitled to the § 8 affirmative

---

[63] *Random House Webster's College Dictionary* (2d ed, 1997), p 1414.

[64] *Id.* at 17.

defense,[65] which allows "a patient and a patient's primary caregiver, if any, [to] assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana . . . ."[66] However, by its own terms, § 8(a) only applies "as a defense to any *prosecution* involving marihuana . . . ."[67] The text and structure of § 8 establish that the drafters and voters intended that "prosecution" refer only to a criminal proceeding. Specifically, § 8(b) explains that a person "may assert the medical purpose for using marihuana in a *motion to dismiss*, and the *charges* shall be dismissed following an evidentiary hearing where the person shows the elements listed in subsection (a)."[68] As a result, § 8 does not provide defendants with a basis to assert that their actions are in accordance with the MMMA.

Although it did so for a different reason than the one we articulate, the Court of Appeals reached the correct conclusion that defendants are not entitled to operate a business that facilitates patient-to-patient sales of marijuana. Because the business model of defendants' dispensary relies entirely on transactions that do not comply with the

---

[65] *Kolanek*, 491 Mich at 403.

[66] MCL 333.26428(a).

[67] *Id.* (emphasis added).

[68] MCL 333.26428(b) (emphasis added). This limitation is further supported by the explicit exceptions that allow a person to assert the § 8 affirmative defense outside the criminal context. Section 8(c) allows a patient or caregiver to assert a patient's medical purpose for using marijuana outside the context of criminal proceedings, but only as a defense to "disciplinary action by a business or occupational or professional licensing board or bureau" or the "forfeiture of any interest in or right to property." MCL 333.26428(c). This case does not represent one of the two limited exceptions contained in § 8(c).

21

MMMA, defendants are operating their business in "[a] building . . . used for the unlawful . . . keeping for sale . . . or furnishing of any controlled substance," and plaintiff is entitled to an injunction enjoining the continuing operation of the business because it is a public nuisance.[69]

## IV. CONCLUSION

Because we conclude that defendants' business does not comply with the MMMA, we affirm the Court of Appeals' decision on alternative grounds. While the sale of marijuana constitutes "medical use" as the term is defined in MCL 333.26423(c), § 4 of the MMMA, MCL 333.26424, does not permit a registered qualifying patient to transfer marijuana for another registered qualifying patient's medical use. Plaintiff is thus entitled to injunctive relief to abate a violation of the Public Health Code.

                            Robert P. Young, Jr.
                            Stephen J. Markman
                            Mary Beth Kelly
                            Brian K. Zahra

---

[69] Former MCL 600.3801.

22

APPENDIX

As an aid to judges, practitioners, and the public, we provide the following summary of our holdings in this case:

(1) The term "medical use," as defined in § 3(e) of the Michigan Medical Marihuana Act (MMMA), MCL 333.26423(e), encompasses the sale of marijuana "to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition."

(2) To be eligible for immunity under § 4 of the MMMA, MCL 333.26424, a registered qualifying patient must be engaging in marijuana-related conduct for the purpose of alleviating the patient's *own* debilitating medical condition or symptoms associated with the debilitating medical condition.

(3) To be eligible for § 4 immunity, a registered primary caregiver must be engaging in marijuana-related conduct for the purpose of alleviating the debilitating medical condition, or symptoms associated with the debilitating medical condition, of a registered qualifying patient to whom the caregiver is connected through the registration process of the Michigan Department of Community Health (MDCH).

(4) As a result, § 4 does not offer immunity to a registered qualifying patient who transfers marijuana to another registered qualifying patient, nor does it offer immunity to a registered primary caregiver who transfers marijuana to anyone other than a registered qualifying patient to whom the caregiver is connected through the MDCH's registration process.

(5)  Section 4(i), MCL 333.26424(i), permits any person to assist a registered qualifying patient with "using or administering" marijuana.  However, the terms "using" and "administering" are limited to conduct involving the actual ingestion of marijuana.

(6)  The affirmative defense of § 8 of the MMMA, MCL 333.26428, applies only to criminal prosecutions involving marijuana, subject to the limited exceptions contained in § 8(c) for disciplinary action by a business or occupational or professional licensing board or bureau or forfeiture of any interest in or right to property.

STATE OF MICHIGAN

SUPREME COURT

STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 143824

BRANDON MCQUEEN and MATTHEW
TAYLOR, doing business as
COMPASSIONATE APOTHECARY, LLC,

      Defendants-Appellants.

CAVANAGH, J. (*dissenting*).

I respectfully disagree with the majority's interpretation of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. In my view, § 4(d)(2) of the act, MCL 333.26424(d)(2), does not limit the definition of "medical use" of marijuana set forth in § 3(e) of the act, MCL 333.26423(e), so that a qualified patient who transfers marijuana to another qualified patient is precluded from asserting immunity under § 4(a) of the act, MCL 333.26424(a). Rather, I would hold that when a qualified patient transfers marijuana to another qualified patient, both individuals have the right to assert immunity under § 4 of the act, MCL 333.26424. Furthermore, as a result of the majority's erroneous interpretation of § 4, the majority improperly concludes that any facilitation of the transfer of marijuana from patient to patient is unlawful and enjoinable as a nuisance.

As the majority explains, defendants' activity falls under the definition of "medical use" of marijuana set forth in § 3(e) of the act, which states that "medical use"

means "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, *transfer*, or transportation of marihuana . . . to treat or alleviate a registered qualifying patient's debilitating medical condition . . . ." MCL 333.26423(e) (emphasis added). However, the majority erroneously concludes that *only* the qualified patient who receives marijuana is entitled to assert § 4 immunity in light of its interpretation of § 4(d)(2). Section 4(d) of the act provides a presumption that "a qualifying patient or primary caregiver is engaged in the medical use of marihuana" when certain conditions are met. MCL 333.26424(d). However, under § 4(d)(2), that presumption may be rebutted with evidence that the "conduct related to marihuana was not for the purpose of alleviating *the* qualifying patient's debilitating medical condition . . . ." MCL 333.26424(d)(2) (emphasis added). The majority reasons that the reference to "the" qualified patient requires the conclusion that only the recipient of marijuana is entitled to § 4 immunity for a patient-to-patient transfer of marijuana because only the transferee's medical condition may be alleviated as a result of the transfer.

I disagree with this interpretation because it is inconsistent with the rules of statutory interpretation. When interpreting the MMMA, "[w]e must give the words of the MMMA their ordinary and plain meaning as would have been understood by the electorate." *People v Kolanek*, 491 Mich 382, 397; 817 NW2d 528 (2012), citing *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004). It is true that, in order for the § 4(d) presumption to apply, the marijuana-related conduct at issue must be for the purpose of alleviating the medical condition or symptoms of the qualified patient who in fact suffers from a debilitating medical condition. However, when a qualified patient transfers marijuana to another qualified patient, the transferor is also engaged in

2

marijuana-related conduct for the purpose of alleviating the medical condition of the qualified patient who is also involved in the transfer and is suffering from a debilitating medical condition. The marijuana-related conduct is the transfer of marijuana, which is expressly included in the definition of "medical use" of marijuana. MCL 333.26423(e). Thus, the reference in § 4(d)(2) to "the" qualifying patient simply requires that one of the two qualified patients involved in the transfer of marijuana have a debilitating medical condition that the transfer of marijuana is intended to alleviate.

Moreover, when interpreting a statute, "[a] court should consider the plain meaning of a statute's words and their placement and purpose in the statutory scheme." *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010) (citation and quotation marks omitted). The majority's singular reliance on the reference in § 4(d)(2) to "the" qualifying patient ignores the fact that § 4(a) and the introductory language of § 4(d) refer to "a" qualifying patient. Therefore, when § 4(d)(2) is viewed in the context of § 4 in its entirety, it is clear that *any* qualified patient "who has been issued and possesses a registry identification card" has the right to assert § 4 immunity. MCL 333.26424(a).

The majority characterizes its holding as creating "asymmetric" immunity under § 4 because it permits a qualified patient who receives marijuana to assert immunity, but a qualified patient who transfers marijuana is not entitled to the same protection. *Ante* at 18 n 60. Thus, under the majority's holding, a qualified patient's right to receive marijuana is effectively extinguished because a patient-to-patient transfer of marijuana can never occur lawfully for both qualifying patients. I cannot conclude from the plain meaning of the language of the MMMA that the electorate intended to afford a person a right only to foreclose any real possibility that the person may benefit from that right.

3

Furthermore, the majority's view is inconsistent with the purpose of the MMMA—to promote the "health and welfare of [Michigan] citizens"—because qualified patients who are in need of marijuana for medical use, yet do not have the ability to either cultivate marijuana or find a trustworthy primary caregiver, are, for all practical purposes, deprived of an additional route to obtain marijuana for that use—another qualified patient's transfer. MCL 333.26422(c).

Lastly, the majority's erroneous interpretation of § 4(d) leads the majority to an inadequate analysis regarding its ultimate conclusion that defendants' facilitation of the transfer of marijuana is enjoinable under MCL 600.3801 and MCL 600.3805 as a public nuisance.[1] Because I would conclude that the MMMA does not exclude patient-to-patient transfers of marijuana from the immunity afforded under § 4 of the act, the next inquiry should be whether the *facilitation* of the transfer of marijuana falls under the act's definition of "medical use" of marijuana, which, if so, means that a qualified patient who facilitates the transfer of marijuana has the right to assert immunity under § 4(a) and is entitled to the presumption that he or she was engaged in the medical use of marijuana under § 4(d).[2] The majority skims over this question by employing the same flawed

[1] MCL 600.3801(1)(c) states that a building may be declared a nuisance if "[i]t is used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of a controlled substance."

[2] Notably, the same analysis is not equally applicable to primary caregivers because while § 4(b) allows primary caregivers to assert immunity for the medical use of marijuana, that immunity is conditioned by the fact that the caregiver must be "assisting a qualifying patient to whom he or she is connected through the department's registration process . . . ." MCL 333.26424(b). Similarly, a qualified patient's right to assert § 4 immunity is conditioned on additional requirements apart from the requirement that he or she was engaging in the medical use of marijuana.

4

reasoning that it uses to conclude that the MMMA does not permit patient-to-patient transfers of marijuana—that the transfers of marijuana that defendants facilitated are only subject to immunity to the extent that the recipient of the marijuana may assert the immunity. Thus, not only has the majority improperly limited a qualified patient's right to receive marijuana for medical use from another qualified patient, as previously explained, but the majority also holds that virtually all medical-marijuana dispensaries are illegal and thus enjoinable as a nuisance because those operations facilitate patient-to-patient transfers of marijuana.

In sum, I respectfully disagree with the majority's interpretation of § 4(d)(2), which limits the definition of "medical use" of marijuana as set forth in § 3(e) because that interpretation erroneously precludes a qualified patient who transfers marijuana to another qualified patient from asserting § 4 immunity. Rather, I would hold that both qualified patients involved in a patient-to-patient transfer of marijuana have the right to assert immunity and are entitled to immunity if they meet the specific requirements of § 4. Thus, I also disagree with the majority's conclusion that any facilitation of a patient-to-patient transfer of marijuana is enjoinable as a nuisance.

Michael F. Cavanagh


MCCORMACK, J., took no part in the decision of this case.

5