**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 23, 2008

PONTIAC FIRE FIGHTERS UNION LOCAL 376,

Plaintiff-Appellee,

v                                                                            No. 132916

CITY OF PONTIAC,

Defendant-Appellant.

_____

BEFORE THE ENTIRE COURT

YOUNG, J.

The issue in this case is whether the circuit court abused its discretion when it issued a preliminary injunction preventing defendant city of Pontiac from implementing its plan to reduce a budget shortfall by laying off members of plaintiff Pontiac Fire Fighters Union Local 376. We hold that the circuit court abused its discretion. Plaintiff failed to meet its burden of establishing that irreparable harm would result if the injunction did not issue, and even supposing plaintiff satisfied its initial burden, it failed to carry its burden in light of defendant's contrary proffered evidence. Accordingly, we reverse the Court of Appeals and vacate the circuit court order granting the preliminary injunction.

## FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant are parties to a collective bargaining agreement (CBA) that was in effect from June 1, 2002, to June 30, 2004. Although the parties did not agree to a new CBA when that agreement expired, the existing agreement continued to govern the parties' relationship after June 30, 2004, because under its own terms the agreement was automatically extended until a new contract was negotiated or ordered.[1]

In 2005 and 2006, defendant faced serious budget shortfalls that it sought to address in part by laying off 28 firefighters. Plaintiff maintained that the layoff plan and the manner in which defendant intended to implement it violated the terms of the CBA[2] and constituted an unfair labor practice.

On June 16, 2006, plaintiff filed a verified complaint in the Oakland Circuit Court seeking a preliminary injunction against defendant's proposed layoffs pending the resolution of an unfair labor practice charge, collective bargaining, or

---

[1] Article VII, Section 12 of the CBA provided: "This Agreement shall remain in full force and effect from July 1, 2002 through June 30, 2004, and it shall be extended automatically thereafter on a daily basis until a new contract is negotiated or ordered."

[2] Plaintiff relied on Article IX, Section 7.D.4 of the CBA, which provided in pertinent part that "[d]uring the duration of the Agreement, there will be no layoff of bargaining unit personnel . . . ." Defendant relied on other portions of the CBA that seemed to presume that defendant could lay off union members. For instance, Article IX, Section 9 set forth advance notice requirements for layoffs such as "[i]f workers are to be laid off, a fourteen (14) day notice shall be given of the date when their services shall no longer be required."

interest arbitration.[3]  Several days earlier, plaintiff had filed an unfair labor practice charge against defendant with the Michigan Employment Relations Commission (MERC).  The verified complaint alleged that the proposed layoffs would necessitate a dramatic reorganization of the fire department and that this reorganization threatened firefighter safety.  Specifically, plaintiff alleged that the layoffs would increase response time to a fire emergency, which would allegedly allow fires to escalate, making them more difficult and more dangerous to extinguish.  Moreover, plaintiff claimed that this problem would be compounded by the smaller number of firefighters present at the scene of a fire.

The circuit court ordered defendant to show cause why the injunction should not be granted.  On June 28, 2006, the court conducted a hearing on the preliminary injunction.  However, the court took no witness testimony at the hearing.  Plaintiff relied on the assertions in its verified complaint and defendant submitted several affidavits to counter plaintiff's allegations.  One affidavit particularly pertinent to this case was submitted by the chief of the Pontiac Fire Department, Wilburt McAdams.

In his affidavit, McAdams addressed many of plaintiff's allegations that the proposed layoffs threatened firefighter safety.  The affidavit noted that the "great majority" of calls received by the fire department are medical runs rather than fire

---

[3] The complaint alleged four counts: (1) breach of the CBA; (2) unfair labor practice for failure to bargain under the public employment relations act (PERA); (3) city charter violation; and (4) health and safety violation.

runs. McAdams contended that minimum staffing levels would be maintained at all times and that in the event staffing reached critically low levels, firefighters would only respond to fires and not medical runs, which would be handled by private ambulance services.

McAdams further averred that firefighter safety at the site of a fire would not be jeopardized by the layoffs. The department's remaining 89 firefighters would continue to adhere to basic safety protocols such as the "incident command system"[4] and the "two in, two out" rule.[5] Moreover, the affidavit asserted that the number of firefighters at the scene of a fire would be unaffected. McAdams claimed that the number of firefighters on each rig would actually increase from three or four to four firefighters. Finally, McAdams averred that the fire department would continue to follow all state and local workplace safety rules and regulations and it would continue to participate in mutual aid programs where nearby communities would lend their firefighters if assistance were required.

In a written opinion issued on June 30, 2006, the circuit court granted the preliminary injunction after ruling that plaintiff satisfied the four traditional

---

[4] According to the affidavit, the incident command system prohibits a firefighter from entering a burning structure unless, after a careful assessment of the fire, an incident commander permits entry.

[5] According to the affidavit, under this rule, a firefighter cannot enter a structure that is on fire without being accompanied by another firefighter and two firefighters remain stationed outside the structure.

elements for injunctive relief.[6]  The court found that both the laid-off firefighters and those who would remain faced a threat of significant, irreparable harm in the absence of injunctive relief.  With respect to the laid-off firefighters, the court found that they would "los[e] their jobs, salary and benefits and create a current hardship that cannot be compensated even if a subsequent arbitration decision would award those laid off a reinstatement of their positions and back wages."  As to the remaining firefighters, the court found that they

> may be irreparably harmed since a reduction in the workforce and the closing of several City fire stations would result in a significant increased risk of harm for the remaining firefighters.  Fewer firefighters would be available to respond to fires and the closing of stations caused by the [layoff] would result in the firefighters having to cover a larger territory.  The remaining firefighters would thus not be able to respond as quickly as they used to[,] which means that they would be faced with fires that have increased in intensity or size and as a result are more dangerous.

---

[6] In *Michigan Coalition of State Employees Unions v Civil Service Comm*, 465 Mich 212, 225 n 11; 634 NW2d 692 (2001), this Court noted that besides the demonstration of irreparable harm, the three additional factors in a preliminary injunction analysis are (1) whether harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (2) the strength of the moving party's showing that it is likely to prevail on the merits, and (3) harm to the public interest if an injunction is issued.

With respect to these three remaining factors, the circuit court in the present case concluded (1) that the balance of harm favored plaintiff notwithstanding defendant's financial difficulties, (2) that plaintiff demonstrated a substantial likelihood of success on the merits, and (3) that the public faced less harm if the injunction issued than if it did not.

Defendant appealed the circuit court's order to the Court of Appeals, which upheld the preliminary injunction in a split, unpublished decision.[7] The majority held that the trial court did not abuse its discretion when it granted the injunction, particularly its findings that plaintiff would suffer irreparable harm and that plaintiff demonstrated a likelihood of success on the merits. The dissenting member of the panel argued that the trial court abused its discretion because plaintiff did not meet its burden of demonstrating irreparable harm. With respect to the laid-off firefighters, the dissent noted that injunctive relief was inappropriate to remedy economic injuries. With respect to the remaining firefighters, the dissent observed that in view of defendant's proffered evidence that the layoffs would not jeopardize firefighter safety, the record did not support the trial court's conclusion to the contrary.

Defendant filed an application with this Court seeking leave to appeal, which we granted.[8]

---

[7] *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, unpublished opinion per curiam of the Court of Appeals, issued November 30, 2006 (Docket No. 271497).

[8] 478 Mich 903 (2007). The grant order asked the parties to address

(1) whether the circuit court had jurisdiction to grant a preliminary injunction with respect to the breach of contract claim (count I) and the unfair labor practice claim (count II), and (2) if the circuit court had jurisdiction: (a) whether it abused its discretion in issuing an injunction to prevent layoffs based on alleged irreparable harm to the laid-off employees; (b) whether the plaintiff presented sufficient evidence to support its claim of an increased risk of harm to the

(continued . . .)

## STANDARD OF REVIEW

We review a trial court's decision to grant injunctive relief for an abuse of discretion.[9] We have recently offered the following articulations of the abuse of discretion standard. There are circumstances where a trial court must decide a matter and there will be no single correct outcome; rather, there may be more than one reasonable and principled outcome.[10] The trial court abuses its discretion when its decision falls outside this range of principled outcomes.[11]

## ANALYSIS

The Court of Appeals has succinctly stated that "'[i]njunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable

---

(. . . continued)

firefighters who would not be laid off; and (c) whether the plaintiff is likely to prevail on its breach of contract and unfair labor practice claims.

With respect to the first question in our grant order, we agree with the parties that the trial court has jurisdiction to issue an injunction in aid of MERC's jurisdiction to decide unfair labor practice charges. MCL 423.216(h).

[9] *Michigan Coalition,* 465 Mich at 217.

[10] *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

[11] *Id.*

7

injury.'"[12]  In the context of labor disputes, this Court has observed that "it is basically contrary to public policy in this State to issue injunctions in labor disputes absent a showing of violence, irreparable injury, or breach of the peace."[13]  This Court recently reiterated the longstanding principle that "a particularized showing of irreparable harm . . . is . . . an indispensable requirement to obtain a preliminary injunction."[14]  The mere apprehension of future injury or damage cannot be the basis for injunctive relief.[15]  Equally important is that a preliminary injunction should not issue where an adequate legal remedy is available.[16]

MCR 3.310 governs the procedure for issuing a preliminary injunction. According to MCR 3.310(A)(1), unless otherwise provided by statute or court

---

[12] *Kernen v Homestead Dev Co*, 232 Mich App 503, 509; 591 NW2d 369 (1998), quoting *Jeffrey v Clinton Twp*, 195 Mich App 260, 263-264; 489 NW2d 211 (1992).

[13] *Holland School Dist v Holland Ed Ass'n*, 380 Mich 314, 326; 157 NW2d 206 (1968).

[14] *Michigan Coalition*, 465 Mich at 225-226.

[15] *Fenestra Inc v Gulf American Land Corp*, 377 Mich 565, 601-602; 141 NW2d 36 (1966); *Dunlap v City of Southfield*, 54 Mich App 398, 403; 221 NW2d 237 (1974) ("[I]t is well settled that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural.").  See also *Royal Oak School Dist v State Tenure Comm*, 367 Mich 689, 693; 117 NW2d 181 (1962) (injunctive relief inappropriate where there is no proof that the party would suffer irreparable injury).

[16] *Grand Rapids Electric R Co v Calhoun Circuit Judge*, 156 Mich 419, 422; 120 NW 1004 (1909).

rule, an injunction may not be granted without a hearing. At this hearing, "the party seeking injunctive relief has the burden of establishing that a preliminary injunction should be issued . . . ."[17] If a court grants preliminary injunctive relief, a trial on the merits must be held within six months of the injunction issuing, except for good cause or a stipulation from the parties to extend the time.[18] Given the extraordinary nature of injunctive relief, our court rules contemplate expeditious resolution of the underlying claim or claims once a preliminary injunction issues.

With these general precepts in mind, we must consider whether the circuit court abused its discretion when it granted plaintiff's motion for preliminary injunction. The first half of the circuit court's irreparable-harm analysis centered on its belief that the layoffs would inflict considerable financial hardship on the laid-off firefighters. We agree with the Court of Appeals dissent that this alleged injury is not irreparable and not the proper subject of injunctive relief. There exists an adequate legal remedy for laid-off firefighters. If the layoffs violated the CBA or constituted an unfair labor practice, MERC or a grievance arbitrator can award back pay, order reinstatement, or provide another remedy to make the laid-off firefighters whole.[19] Granting extraordinary equitable relief to remedy these

---

[17] MCR 3.310(A)(4).

[18] MCR 3.310(A)(5).

[19] See, e.g., MCL 423.216(b).

economic injuries is unnecessary and inappropriate because they can be remedied by damages at law.[20]

In the second half of its irreparable-harm analysis, the circuit court found that the layoffs would deplete the number of available firefighters, which would increase the remaining firefighters' workload and lengthen their response time, which in turn would require firefighters to fight larger, more intense, and more dangerous fires. Thus, firefighter safety would be jeopardized. To support this chain of logic, the circuit court appeared to adopt without reservation plaintiff's factual assertions.

However, while plaintiff's argument that staffing decisions might affect firefighter safety is appealing as a general proposition, upon closer scrutiny, plaintiff alleged nothing more than an apprehension of future injury or damage. Indeed, the circuit court could only speculate that the firefighters "may" have been irreparably harmed by the layoffs. Neither plaintiff nor the circuit court detailed how the remaining firefighters faced *real* and *imminent* danger from the layoffs

---

[20] *Thermatool Corp v Borzym,* 227 Mich App 366, 377; 575 NW2d 334 (1998). Plaintiff relies on this Court's dictum in *Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 168; 365 NW2d 93 (1984), that "[w]e do not hold that the absence of usable resources and of obtainable alternative sources of income with which to support one's self and one's dependents, coupled with the prospect of destitution, serious physical harm, or loss of irreplaceable treasured possessions, could never support a finding of irreparable injury in an appropriate case." We doubt whether the *Michigan State Employees Ass'n* Court was correct that this is an adequate basis to support a finding of irreparable injury, but, in any event, the record in this case does not support plaintiff's reliance on it.

rather than future, speculative harm. Under established principles governing injunctive relief, plaintiff's verified complaint, standing alone, failed to make a particularized showing of irreparable harm. Thus, plaintiff failed its burden of proof from the outset.

In reaching this conclusion, we do not trivialize the dangers accompanying firefighting. However, because firefighting is a dangerous job, every managerial decision in the abstract might touch on a safety issue. A mere apprehension of reduced safety by the union is insufficient grounds for a court to grant equitable relief. Otherwise, the extraordinary nature of a preliminary injunction would be trivialized. Plaintiff bears the responsibility of submitting sufficiently persuasive evidence that particular, irreparable harm will result if an injunction does not issue.

Further, even if we assumed arguendo that plaintiff initially succeeded in demonstrating particularized, irreparable harm, it failed to carry its burden of proof in the face of contrary evidence submitted by defendant that specifically refuted plaintiff's allegations. For instance, in response to plaintiff's allegation that the number of firefighter personnel at a fire scene would be limited and reduced to unsafe levels, Fire Chief McAdams stated that the number of firefighters present at a fire would not be reduced by the layoffs and that the number of firefighters in each rig would increase from three or four to four. And McAdams averred that additional, outside support was available, if needed. For instance, because the "great majority" of calls to which the fire department

11

responded were medical runs, private ambulance services, rather than firefighters, would be used to respond to those calls if the department was functioning at its minimum daily staffing level. Thus, the firefighters would remain available to fight fires. Also, because the department participated in mutual aid programs with the fire departments of neighboring communities, additional firefighters from other communities could be called on for assistance. Moreover, safety protocols, such as the "two in, two out" rule and the incident command system, would remain in place at the scene of every fire. Defendant submitted evidence that it would maintain the same number of firefighters at the scene of a fire, would retain existing policies to protect the health and safety of firefighters, and would use outside resources to ensure that a minimally staffed fire department did not overburden firefighters with medical runs at the expense of fighting fires. Simply put, plaintiff's nonspecific allegations of irreparable harm were refuted by the more specific, sworn statements in Fire Chief McAdams's affidavit.

In the face of this conflicting evidence that blunted the force of plaintiff's safety allegations, it behooved plaintiff to do more than rely on its initial factual allegations. Plaintiff did not do so. Thus, for this additional reason, it failed to carry its burden of demonstrating irreparable harm under MCR 3.310(A).

We are not second-guessing the circuit court's discretion to substitute the outcome we prefer. For reasons that are unclear, the circuit court in its written opinion granting the preliminary injunction seemed to credit only plaintiff's allegations and did not at all consider defendant's contrary evidence. Plaintiff

12

failed to carry its burden of proof to make a particularized showing of irreparable harm and also failed to maintain this showing in the face of defendant's contrary evidence. A grant of a preliminary injunction under these circumstances falls outside the principled range of outcomes. Thus, the circuit court abused its discretion when it granted the injunction. Accordingly, we reverse the Court of Appeals and vacate the circuit court order.[21]

Reversed; preliminary injunction vacated.

Robert P. Young, Jr.
Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

---

[21] The trial court ruled, and the Court of Appeals majority agreed, that plaintiff demonstrated a likelihood of success on the merits of its underlying claims. Because plaintiff failed to prove that it would suffer irreparable harm from the layoffs, we take no position on whether plaintiffs could successfully prove a breach of the CBA or an unfair labor practice.

STATE OF MICHIGAN

SUPREME COURT

PONTIAC FIRE FIGHTERS UNION,
LOCAL 376,

       Plaintiff-Appellee,

v                                    No. 132916

CITY OF PONTIAC,

       Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I disagree with the majority's conclusion that the Pontiac Fire Fighters Union failed to meet its burden of showing that the proposed layoff of 28 firefighters would cause irreparable harm to the remaining firefighters.[1] The union alleged that the layoffs would lead to the closing of fire stations and would lengthen the time for responding to fires. The firefighters would travel longer distances to reach fires and would encounter longer-burning, and therefore more dangerous, fires. The fire chief's affidavit on behalf of the city did not rebut this

_____

[1] The union had filed an unfair labor practice charge against defendant with the Michigan Employment Relations Commission (MERC). It requested an injunction from the circuit court "pending resolution of the parties' dispute by MERC." It also asked for and received from the court an injunction to maintain the status quo pending compulsory arbitration under Act 312, MCL 423.231 *et seq*. But no Act 312 arbitration was actually pending when the circuit court issued the injunction. The injunction was properly issued in aid of MERC's jurisdiction over the unfair labor practice charge.

allegation. To the extent that it granted injunctive relief based on this unchallenged allegation, the circuit court did not abuse its discretion.[2]

The union alleged in counts 9, 24, and 25 of the verified complaint that the layoffs would affect firefighter safety:

> 9. Plaintiff is informed and believes that if the unilateral layoff decision is implemented, the Pontiac Fire Department will undergo substantial adverse reorganization which will include the closing of fire stations, the reduction of staffing on fire apparatus, the elimination of EMS-ALS rescue units, the realignment and expansion of fire territories, the elimination of mutual aid participation for hazardous materials and technical rescue responses, and other unilateral changes many of which will constitute violations of the Agreement in such matters as staffing, reduction of personnel on vacation, and use of Kelly days.
>
> * * *
>
> 24. The layoff of 28 fire fighters and fire fighter paramedics will reduce the fire extinguishment and medical/rescue capability of the Fire Department to unacceptable levels posing a threat and hazard to fire fighters and citizens alike.
>
> 25. The reorganization of the Fire Department, the substantial reduction of personnel, and the closing of fire stations will increase response time to a fire scene and/or medical/rescue run. Increased response time of emergency equipment poses a hazard to responding fire fighters and citizens on the route. As a consequence of delay in responding to a fire scene, the fire escalates making extinguishment more difficult and increasing the danger to fire fighters and possibly occupants of a dwelling. The number of personnel at a fire scene will be limited and reduced to unsafe levels.

---

[2] MCR 3.310(A)(4) states that "[a]t the hearing on an order to show cause why a preliminary injunction should not issue, the party seeking injunctive relief has the burden of establishing that a preliminary injunction should be issued . . . ."

The city countered these allegations with an affidavit from Fire Chief Wilburt McAdams, which stated in relevant part:

2. That the great majority of calls to which the department responds are medical runs.

3. That the department will continue to maintain minimum staffing levels. In the event the department is at the minimum level of seventeen firefighters on a given day, private ambulance services will be used to respond to medical runs, and the City's firefighters will be used solely for fighting fires.

4. That, even after the layoff of the 28 firefighters, the department will have 89 firefighters, and will continue to operate utilizing both an incident command system and the "two in two out" rule which forbids any firefighter from entering a structure fire unless he/she is accompanied by another firefighter and there are two firefighters outside the structure. In addition, the department will continue to assign a safety officer to each fire. The number of firefighters at a fire scene will not be impacted.

5. Using the incident command system, firefighters will not enter a burning structure until there has been a careful assessment of the fire and the incident commander allows entry.

4. [sic] That, in addition, the department will continue to be in compliance with all applicable departmental rules and regulations of the City of Pontiac and State of Michigan, including all OSHA regulations. The statements of the NFPA are not binding rules and have not been adopted in Michigan.

5. [sic] The number of firefighters per rig will actually increase from 3-4 currently to 4 for all engines. In addition, the department will continue to participate in mutual aid, under which firefighters from other departments . . . can be called for assistance if needed.

The union's complaint alleged both that fewer firefighters would be available to fight fires and that their response time would be increased. The fire chief averred that the number of firefighters available to fight fires would remain

3

the same, and so would the safety rules. However, the fire chief did not offer a solution to the problem of increased response time. Nor did he explain how existing safety rules would protect the firefighters who would confront more intense fires.

The circuit court issued a preliminary injunction specifically based on the union's allegation that the closing of fire stations would affect the remaining fire stations' response time:

> . . . Plaintiff may be irreparably harmed since a reduction in the workforce and the closing of several City fire stations would result in a significant increased risk of harm for the remaining firefighters. Fewer fire fighters [sic] would be available to respond to fires and the closing of stations caused by the lay off would result in the firefighters having to cover a larger territory. The remaining firefighters would thus not be able to respond as quickly as they used to which means that they would be faced with fires that have increased in intensity or size and as a result are more dangerous.

The majority faults the circuit court for not considering the fire chief's affidavit, and it faults the union for not offering additional evidence in response to the affidavit. At the show-cause hearing, the union did offer to present additional testimony and diagrams of the runs.[3] Thus, the union cannot be faulted for failing to present additional evidence. The majority's conclusion that the circuit court failed to consider the fire chief's affidavit is also unpersuasive. Rather, the union

---

[3] In deciding not to take testimony, the circuit court followed *Campau v McMath*, 185 Mich App 724, 728; 463 NW2d 186 (1990). In that and other cases, the Court of Appeals held that an evidentiary hearing was not required for issuing an injunction. See also *Fancy v Egrin*, 177 Mich App 714, 722; 442 NW2d 765 (1989).

4

met its burden of proof through the unchallenged allegations in its complaint. To the extent that the circuit court based its order on these unchallenged allegations, it did not need to address the fire chief's other averments.

The circuit court did not abuse its discretion in concluding that irreparable harm to the remaining firefighters called for injunctive relief.[4] I would affirm the judgment of the Court of Appeals and the preliminary injunction.

Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver

---

[4] The court additionally concluded that the union was likely to succeed on the merits because the parties' contract clearly prohibited layoffs and was in effect until a new contract was negotiated. The city could not use financial hardship as an excuse to violate the contract it had negotiated with the union. The Court of Appeals affirmed this conclusion.