KELLY, J.
(concurring in part and dissenting in part). I concur in the majority’s decision to remand this case to the circuit court for a clear determination of whether the city of Detroit’s reorganization plan violates § 13 of Act 312. The remand is necessary because the circuit court stated its conclusions in terms that are too tentative.
The circuit court must determine whether the union is likely to succeed on the merits of its claim that a status quo violation occurred. If it finds such a likelihood, it may presume that the union will be irreparably harmed should the violation not be enjoined for the duration of the arbitration proceedings. Because I have reached this conclusion, it follows that I would not overrule Detroit Police Officers Ass’n v Detroit.[1]
*37 In Detroit POA, the Court of Appeals held that the trial court was not required to make a finding of irreparable harm or inadequate remedy at law before enjoining violations of § 13 of Act 312.[2] It relied on the interpretation by federal courts of a similar status quo provision in the federal Railway Labor Act (RLA).[3] That provision states in relevant part that “rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon ... by the Mediation Board . .. .”[4]
Federal courts, including the United States Supreme Court, have held that this provision allows injunctive enforcement by the district courts without a showing of irreparable harm in cases of major disputes.[5] Federal courts forgo the traditional requirement of irreparable harm because the plain statutory language does not require such a showing and irreparable harm is presumed in cases involving major disputes.[6]
*38 The majority argues that issuing an injunction without a showing of irreparable harm goes against the public policy of this state and that a status quo violation should not receive special treatment.[7] However, only one of the cases cited by the majority involves a violation of § 13 of Act 312. In its peremptory order in that case, the Court did not consider the public policy concerns codified in Act 312.[8] And when the Court had an opportunity to consider whether the holding of Detroit POA contradicted the public policy of this state, it denied leave to appeal.[9]
It is an accepted rule of statutory construction that the Court should not impose policy choices that differ from those selected by the Legislature.[10] The majority here acknowledges the public policy concerns that occasioned the passing of Act 312: “Act 312 was intended, in the specific context of police and firefighter unions, to redress the imbalance in bargaining power created by the prohibition of strikes, and to preclude the possibility of an illegal strike by these unions that provide vital public services, namely police and fire protection.”[11] These policy concerns are expressly codified in two statutes: MCL 423.231, which affords arbitration to police and firefighter unions as “an alternate, expeditious, effective and binding procedure for the resolution *39 of disputes,”[12] and MCL 423.243, which prohibits unilateral changes in the status quo while arbitration is pending.[13]
The traditional requirement of irreparable harm requires a determination that the injury cannot be repaired by means other than an injunction.[14] A unilateral change in the status quo has an obviously negative effect on a union’s bargaining power. It compromises the integrity of the bargaining process. Because of the bargaining disadvantage at which unilateral changes place a union, the union is unlikely to attain a retroactive restoration of the status quo. Because a strike is the only method of maintaining bargaining power in the face of a unilateral change, Act 312 aims to prevent the resort to strikes by police and firefighters. Thus, in passing Act 312, the Legislature effectively decided that any remedy other than an injunction would be inadequate. Consequently, a status quo violation presumptively causes irreparable harm.
The Court of Appeals in Detroit POA did not err in concluding that no showing of irreparable harm was necessary to enjoin violations of the status quo during Act 312 arbitration. While I concur in the decision to remand this case to the circuit court, I would not *40 require the union to show irreparable harm. Such harm should be presumed if the court determines that the city’s reorganization plan violates the status quo.[15]

 Detroit Police Officers Ass’n v Detroit, 142 Mich App 248; 369 NW2d 480 (1985) (Detroit POA).

 Id. at 253.

 45 USC 151 et seq.

 45 USC 156.

 Major disputes involve disagreements over future contractual rights or changes in the terms in existing agreements. The parties are required to maintain the status quo during a lengthy bargaining and mediation process. ABX Air, Inc v Airline Professionals Ass’n of the Int’l Brotherhood of Teamsters, Local Union No 1224, AFL-CIO, 266 F3d 392, 396 (CA 6, 2001). The United States Supreme Court authorized the use of injunctive relief to enforce the status quo provision of the RLA for major disputes. Consolidated Rail Corp v R Labor Executives’ Ass’n, 491 US 299, 303; 109 S Ct 2477; 105 L Ed 2d 250 (1989). In Detroit & Toledo Shore Line R Co v United Transportation Union, 396 US 142, 150; 90 S Ct 294; 24 L Ed 2d 325 (1969), the Supreme Court explained its rationale: “[Djelaying the time when the parties can resort to self-help provides time for tempers to cool, helps create an atmosphere in which rational bargaining can occur, and permits the forces of public opinion to be mobilized in favor of a settlement without a strike or lockout.”

 A showing of irreparable injury is not required in light of the public interest in settlement of labor disputes and the fact that the duty to *38 maintain the status quo “contains no qualification to the effect that the carrier has no obligation to [maintain the status quo] unless irreparable injury would otherwise result.” Southern R Co v Brotherhood of Locomotive Firemen and Enginemen, 337 F2d 127, 133-34 (DC Cir, 1964).

 Ante at 34 n 31.

 See Michigan Law Enforcement Union, Teamsters Local 129 v Highland Park, 422 Mich 945 n 1 (1985).

 Detroit Police Officers Ass’n v Detroit, 424 Mich 894 (1986).

 People v McIntire, 461 Mich 147, 152-153; 599 NW2d 102 (1999).

 Ante at 29.

 MCL 423.231 states in relevant part: “It is the public policy of this state that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes ....” (Emphasis added.)

 MCL 423.243 states: “During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act.”

 Michigan Coalition of State Employee Unions v Civil Service Comm, 465 Mich 212, 241; 634 NW2d 692 (2001) (CAVANAGH, J., dissenting).

 I believe that the most important reason for issuing an injunction for the duration of Act 312 arbitration proceedings is to protect the parties’ bargaining positions. But irreparable harm should be presumed in the case of a status quo violation for another reason as well.
The majority posits that, to show a status quo violation, the union must demonstrate that the city’s reorganization plan is “so ‘inextricably intertwined with safety’ that its implementation would impermissibly alter the status quo by altering this ‘condition’ of employment.” Ante at 23. But the impact of proposed layoffs on firefighter safety was also deemed relevant to the question of irreparable harm in Pontiac Fire Fighters Union Local 376 v Pontiac, 482 Mich 1, 10-11; 753 NW2d 595 (2008) which the majority cites for the four traditional elements of injunctive analysis. Ante at 34 n 31. Unlike Pontiac, this case involves an Act 312 arbitration, so the majority directs the circuit court to look for both irreparable harm and a status quo violation. If both these inquiries are premised on the impact of the layoffs on firefighter safety, then the majority essentially directs the circuit court to engage in a duplicative analysis.