*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID E. MARTIN and INTEGRITY BACK AND BRAIN, LLC,

UNPUBLISHED
October 12, 2023

Plaintiffs-Appellees,

v

No. 361659
Van Buren Circuit Court
LC No. 2022-071643-NF

PROGRESSIVE MICHIGAN INSURANCE, CO.,

Defendant-Appellant.

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's grant of a preliminary injunction to plaintiff, David Martin, requiring defendant to restore and pay plaintiff's no-fault benefits at the rate prior to July 2, 2021, until the conclusion of the litigation. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff suffered traumatic brain and spinal cord injuries in a 2006 motor vehicle accident. The spinal cord injury rendered plaintiff a quadriplegic. He required 24/7 high-tech care and approximately six-hours-a-day of nursing care. At the time of his injury, plaintiff was insured by defendant, and it paid plaintiff's medical expenses under the no-fault insurance act, MCL 500.3101 *et seq*. Previously, defendant paid plaintiff's medical provider, Integrity Back and Brain, LLC (IBB), $30 an hour for high-tech home care and $120 an hour for nursing care. However, following the Michigan Legislature's 2019 amendment to the no-fault act, defendant stopped paying IBB's invoices for several months and then reduced the hourly rate of reimbursement for high-tech care to $17.18 and reduced the hourly rate of reimbursement for nursing care to $37.56.

---

[1] *Martin v Progressive Mich Ins Co*, unpublished order of the Court of Appeals, entered August 11, 2022 (Docket No. 361659).

Defendant's reduction in reimbursement was a response to the amended no-fault act. The amendment to the no-fault act adopted a new fee schedule, effective July 2, 2021, that reduced reimbursement on various categories of healthcare expenses, including as relevant in this case, in-home care. See MCL 500.3157, as amended by 2019 PA 21. Defendant asserted that the amended statute applied to all claims for coverage, including those by individuals injured before the effective date of the amendment.[2]

In response to the reduction in benefits, plaintiff filed a complaint against defendant, asserting a single claim that defendant's reduction in reimbursement rates constituted a breach of contract and a breach of defendant's statutory obligations under the no-fault act. Specifically, plaintiff sought back and future payment of IBB's bills, 12% penalty interest as provided by MCL 500.3142, and attorney fees. Further, plaintiff requested an injunctive order requiring defendant to fully and timely pay IBB at its previous rates during the pendency of the action. The trial court granted plaintiff's motion, determining that plaintiff satisfied the criteria for injunctive relief. Further, the trial court reasoned that payment of plaintiff's medical bills at the existing rate before enactment of the amendment maintained the status quo. Defendant appealed the trial court's decision, contending that it was a "reflexive" grant "to appease the apprehensive cries of a plaintiff" who was "driven solely by future, unrealized anxieties" that he might lose his in-home attendant care providers.

## II. ANALYSIS

The appellate court reviews a trial court's decision to grant a preliminary injunction for an abuse of discretion. *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Id*.

An injunction is an "extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Id*. (quotation marks and citation omitted). "The purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights." *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012) (quotation marks and citation omitted). The status quo is "the last actual, peaceable, noncontested status which proceeded the pending controversy." *Steggles v Nat'l Discount Corp*, 326 Mich 44, 51; 39 NW2d 237 (1949). The party seeking the preliminary injunction bears the burden of establishing that the preliminary injunction should be issued. MCR 3.310(A)(4).

Our Supreme Court has identified four factors that are applicable to a court's determination

---

[2] During the pendency of this appeal, our Supreme Court held that MCL 500.3157(7) and (10) do not apply retroactively to alter the personal protection insurance (PIP) benefits of those injured before the effective date of the amended statute. *Andary v USAA Cas Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 164772); slip op at 22, 55.

whether to grant a preliminary injunction:

> [H]arm to the public interest if an injunction issues; whether harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted; the strength of the applicant's demonstration that the applicant is likely to prevail on the merits; and demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted. [*State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984).]

However, these four factors are simply a guide for the trial court's exercise of discretion, and the factors are not designed to be rigid and unbending requirements. *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 25; 988 NW2d 800 (2022). On appeal, much deference is given to the lower court's decision to grant or deny the preliminary injunction. *Id*.

"[A] particularized showing of irreparable harm . . . is . . . an indispensable requirement to obtain a preliminary injunction." *Pontiac Fire Fighters*, 482 Mich at 9 (quotation marks and citation omitted). "[A]n injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural." *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist (On Remand)*, 293 Mich App 143, 149; 809 NW2d 444 (2011) (quotation marks and citation omitted). The injury to the party seeking injunctive relief is evaluated in light of the totality of the circumstances affecting the party and the alternatives available to the party. *State Employees Ass'n*, 421 Mich at 167.

First, defendant asserts that plaintiff was not entitled to a preliminary injunction because an adequate remedy existed at law. That is, plaintiff has a remedy at law through economic recovery for payment of outstanding benefits, interest, and attorney fees.

However, plaintiff's requested remedy in his motion for a preliminary injunction was not merely economic. If defendant ceased paying for plaintiff's medical care, then plaintiff would be unable to pay for those services, and they would cease. Plaintiff alleged that his health and welfare would suffer as a result. His request was to preserve the status quo during the pendency of the underlying action. Plaintiff did not have an adequate legal remedy during the pendency of this action because payment of damages at the end of this action would not provide him with the healthcare services that he required and would not otherwise have without the injunction during the pendency of the action. See *Pontiac Fire Fighters*, 482 Mich at 8.

Defendant contends that the preliminary injunction merely distorted the status quo. Specifically, it asserts that the trial court exceeded the status quo because the status quo at the last peaceable time before litigation was determined by the amendment to MCL 500.3157. Further, defendant submits that the status quo was established when IBB accepted defendant's payments for six months before filing the underlying action.

Contrary to defendant's assertion, the preliminary injunction preserved the status quo. Regarding defendant's claim that the amendment to MCL 500.3157 set the status quo with its new fee schedule, this argument was extinguished by our Supreme Court's determination that MCL 500.3157(7) and (10) do not apply retroactively to alter the personal protection insurance

(PIP) benefits of those injured before the effective date of the amended statute. *Andary v USAA Cas Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 164772); slip op at 22, 55.

We further reject the claim that IBB's acceptance of reduced payments from defendant was the status quo. The fact that plaintiff took several months to file the underlying action does not demonstrate that this period of time was the last actual, peaceable noncontested status between the parties. See *Steggles*, 326 Mich at 51. Instead, during this time, IBB attempted to receive full and timely payment from defendant before resorting to legal action. Plaintiff filed the underlying action when these efforts failed. The six-month period during which plaintiff's healthcare was underfunded was not peaceable. Instead, the last actual, peaceable, noncontested status between the parties was the period before July 2, 2021, when defendant routinely paid $30 an hour for plaintiff's high-tech care and $120 an hour for plaintiff's nursing care.

Third, defendant asserts that the trial court abused its discretion when it granted the preliminary injunction. Specifically, it claims that no actual harm befell plaintiff at the time of the preliminary injunction hearing, and therefore, plaintiff's claim was speculative. Further, defendant asserts that the trial court minimized the harm that it would sustain if the injunction was granted and that the trial court precluded it from challenging the reasonableness of the hourly rates charged. When the harm was balanced, defendant claimed that its harm, and harm suffered by the public through reduced savings, outweighed any harm that plaintiff might face.

Despite defendant's allegations, we cannot conclude that the trial court abused its discretion when it granted the preliminary injunction. First, the trial court explained that plaintiff would suffer irreparable harm to his health, safety, and overall well-being if the injunction was not granted. Indeed, plaintiff submitted affidavits to support this claim of inadequate healthcare. He required 24/7 high-tech care and nursing care to maintain his health and well-being, and there was no indication that plaintiff could secure another long-term provider for this care. The trial court's decision was well within the range of reasonable and principled outcomes. See *Pontiac Fire Fighters*, 482 Mich at 8.

Plaintiff presented evidence that he was severely injured in a motor vehicle accident in 2006. As a result of his injuries, plaintiff required 24/7 high-tech care and six-hour-a-day nursing care. In the year before the no-fault reform, defendant generally paid IBB $30 an hour for plaintiff's high-tech care and $120 an hour for nursing care. IBB claimed that it could not continue providing care for plaintiff when defendant ceased paying invoices and then reduced its hourly rate of reimbursement for high-tech care to $17.18 and nursing care to $37.56. IBB's owner expressed that it would stop providing plaintiff care because of its inability to provide care at the reduced rate. Plaintiff's caseworker contacted over 20 alternative service providers and could not secure comparable care. Reduction in payment would lead IBB to cease services at its current level to plaintiff, and no explored alternative was available to provide plaintiff the same care at a reduced cost. Removing plaintiff from IBB's care without comparable alternative providers risked his safety and would leave him in danger of suffering unwarranted medical issues. Defendant failed to rebut the adverse health consequences posed to plaintiff in the absence of alternative comparable care.

The trial court determined that the risk to plaintiff's physical well-being outweighed the purely economic harm that defendant faced by continuing to pay for plaintiff's care at the previous

rate during the pendency of the underlying action. The trial court explained that "it's a comparison of dollars and cents to the defendant versus relating the necessary care to the plaintiff." Defendant would have faced a financial loss if the trial court ultimately determined that defendant properly reduced payment for plaintiff's healthcare. This harm did not outweigh the harm to plaintiff's health and safety.[3] And, the public was not harmed by reduced savings or a circumvention of the amendments to the no-fault statute. As explained in *Andary*, the amendments were not intended to retroactively reduce the benefits of insureds injured before the effective date of the amendments. Therefore, the preliminary injunction in this case did not circumvent the Legislature's intent or reduce the savings intended by the amendment.

Finally, the trial court determined that plaintiff established a likelihood of success on the merits in several regards, including that defendant failed to make timely payments and unlawfully reduced the amounts payable to plaintiff's healthcare provider. Indeed, the *Andary* Court determined that the Legislature did not intend for MCL 500.3157(7) and (10) to apply retroactively to insureds injured before the amendment's effective date. *Andary* ___ Mich at ___; slip op at 22, 55. Further, plaintiff presented evidence that defendant failed to timely pay invoices to IBB. The no-fault act provides that failure to pay PIP benefits within 30 days after the proof is received by the insurer results in a 12% interest penalty. MCL 500.3142(2) and (4). Under the circumstances, the trial court did not abuse its discretion when it granted the preliminary injunction.[4]

Affirmed. Plaintiff, David Martin, may tax costs as the prevailing party. MCR 7.219(A).

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

[3] Defendant briefly submits that it was harmed because issuance of the injunction precluded it from challenging the reasonableness of the hourly rates alleged by IBB and that the trial court arbitrarily declared that defendant would pay rates of $30 and $120 an hour. The trial court ordered the continuation of the previously paid rates. And, upon granting the preliminary injunction, the action must be promptly addressed on the merits. See MCR 3.310(A)(5). Defendant does not explain why the preliminary injunction would prevent defendant from arguing that the rates were unreasonable. Further, defendant opted to pursue interlocutory relief instead of seeking action on the merits that would have occurred within six months unless good cause was shown or by stipulation of the parties. *Id*.

[4] We reject defendant's contention that the trial court was required to conduct an evidentiary hearing. A formal hearing was required and held, and there was no indication that testimony was necessary in light of the parties' submission of documentary evidence. *Campau v McMath*, 185 Mich App 724, 728; 463 NW2d 186 (1990).